R. J. DUNNING et al. v. W. D. BURDEN AND WIFE et al.

*Devise—Construction of Will—Conditional Limitation.*

A testator devised a life estate in a part of his lands to his wife, with remainder to the two children of a deceased son, provided that if said children should die "leaving no lawful heir (either or both of them) of their own body" the remainder should go to the children of another son and daughter of the testator. The children of the second son and daughter were provided for in another part of the will: *Held*, that the testator intended the share of his realty, set apart to the two children of the first son, as a provision, primarily, for each of them at all events during their lives, and in case both should leave issue them surviving, then to vest a moiety in the issue of each, but if only one should die leaving a child or children such surviving issue to take the whole.

CLARK, J., dissenting.

This was a CIVIL ACTION, tried at Special Term, November, 1893, of BERTIE Superior Court, before *Bynum, J.,* a

3

jury trial having been expressly waived, upon an agreed statement of facts, which were substantially as follows:

That Parker Harmon died intestate in Bertie county on the 4th day of July, 1877, aged eighty-two years, seized and possessed of the land described in the complaint, which is a part of the land mentioned as the home plantation in "Items 1st and 2d" of the last will and testament of the said Parker Harmon; that Parker Harmon left him surviving the following children, viz.: Abram T. Harmon and Sarah Dunning, and Ella and Walter Harmon, children of Moses R. Harmon (Moses Harmon being a son of said Parker); that the material parts of his will were as follows:

"*Item 1st.* I lend to my beloved wife, Cilvia Harmon, the lands and plantation whereon I now reside, including my mansion house and all other houses thereunto belonging, together with all the household and kitchen furniture of every kind, also one horse, one ox and five head of other cattle, two sows and pigs, two ewes and lambs, her choice of all of said stock, also one year's provisions, if on hand, or out of the growing crop, as the case may be, to her, my beloved wife, Cilvia Harmon, during her natural life.

"*Item 2d.* After the death of my beloved wife, Cilvia Harmon, I give and bequeath the said lands and plantation whereon I now reside to the children of my deceased son, Moses R. Harmon, to them and their lawful heirs forever: provided, however, if the said Ella C. Harmon and Walter M. P. Harmon should depart this life, leaving no lawful heir (either or each of them) of their own body, I give and bequeath the said lands and plantation above named to the children of my son, Abram T. Harmon, and the children of my daughter, Sarah Dunning, wife of Andrew J. Dunning, to them severally and their heirs forever.

"*Item 3d.* My other lands of which I am seized and possessed, known as the Nicholas Harmon tract and Outlaw

tract, I desire to be sold by my executors (if not disposed of during my life) and the net proceeds arising therefrom I give and bequeath to my son Abram T. Harmon's children and my daughter Sarah Dunning's children (wife of Andrew J. Dunning), to them severally and their heirs forever.

"*Item 4th.* After the death of my beloved wife, Cilvia Harmon, I desire that all my property of every kind and description, whether real or personal, shall be sold by my executor and the net proceeds arising therefrom I give and bequeath to my son Abram T. Harmon's children and my daughter Sarah Dunning's children (wife of Andrew J. Dunning), to them severally and their heirs forever."

That Walter M. P. Harmon and Ella C. Burden, formerly Ella C. Harmon, are the children and only heirs at law of Moses R. Harmon, son of Parker Harmon; that Walter M. P. Harmon died on the 22d day of May, 1887, without ever having been married and without ever having had issue born unto him; that the plaintiffs are the children of Abram T. Harmon and the children of Sarah Dunning, which are mentioned in section or item two of the will and testament of Parker Harmon. The infant plaintiff Williford is the grandchild of Sarah Dunning and represents his deceased mother; that the defendants are Ella C. Burden, formerly Ella C. Harmon, she having intermarried with the defendant W. D. Burden, and her said husband is joined as a party defendant; that said Ella Burden had a child born alive by said marriage and has now seven children living; that Cilvia Harmon, widow of Parker Harmon, died on the 12th day of July, 1878.

Upon this state of facts his Honor gave judgment for the plaintiffs, and defendants appealed.

*Mr. St. Leon Scull,* for plaintiffs.

*Messrs. F. D. Winston* and *Peebles & Martin,* for defendants (appellants).

AVERY, J.: Our attention is called, for the purpose of construing the devise of the home place after the death of the testator's wife and especially the contingent limitation over to the children of his son Abram and his daughter Sarah, to the second item of the will, which provides as follows: "After the death of my beloved wife, Cilvia Harmon, I give and bequeath the said lands and plantation whereon I now reside to the children of my deceased son, Moses R. Harmon, to them and their lawful heirs forever: provided, however, if the said Ella C. Harmon and Walter M. P. Harmon should depart this life leaving no lawful heir (either or each of them) of their own body, I give and bequeath the said lands and plantation above named to the children of my son, Abram T. Harmon, and the children of my daughter,.Sarah Dunning, wife of Andrew J. Dunning, to them severally and their heirs forever."

We think that the language is clearly susceptible of the interpretation that the testator intended the share of his realty, set apart to the two children of his son Moses, as a provision primarily for each of them at all events during their lives, and, in case both should leave issue them surviving, then to vest a moiety in the issue of each, but if only one should die leaving a child or children, that such surviving issue would take the whole. If the words in parenthesis, "either or each of them," had followed the name of Walter Harmon or the word "life," the meaning would manifestly have been that if either should die without lawful issue the limitation over should take effect immediately, and the survivor, though blessed with numerous offspring, should forfeit forthwith his or her interest for life and abandon all claim to the executory devise for such children, because of the barrenness or celibacy of the other. Such an arrangement of the words would have impelled us to adopt the construction contended for by the plaintiff. However unnatural or unreasonable the purpose to make

his bounty to one branch of his family depend upon such a contingency might have seemed, we would have been controlled by the unmistakable meaning of the language used. But the purpose of the testator, apparent from a fair construction of his words, was that if either or each (in the sense of both) should leave surviving them issue ("lawful heirs of their own body") then the limitation over to the children of Abram Harmon and Sarah Dunning would be defeated, and the fee would vest an undivided moiety in the issue of each, if both should leave issue surviving them or if only one should leave a child or children surviving them, then the whole in such issue. By this interpretation we not only give to the language employed its natural and obvious meaning, but we arrive at an interpretation consistent with the purpose on the part of the testator, which the law imputes to him in all cases, where the words used are ambiguous, to provide equally for those who are nearest to him, and especially for his lineal descendants. Schouler on Wills, sec. 479 *et seq.* Looking to the whole of the will to determine whether we can discover any general intent or leading purpose which is either in harmony with or repugnant to the interpretation we have given to the clause in question, we find that in the two succeeding paragraphs the testator provides for the plaintiffs, children of his daughter, Sarah Dunning, and of his son, Abram Harmon, by a sale of two tracts of land named and of all other property, real and personal, not specifically devised, and a division of the proceeds of such sales between the children representing the two. The leading purpose of the testator seemed to be to make his grandchildren, issue of his three children, the objects of his bounty. If either or both of the children of Moses should leave issue it seemed to be his wish that they should represent Moses, just as though they were inheriting the land devised by the great-grandfather, from the grandfather, *per stirpes.*

To make the issue of Ella forfeit all claim to a share in the ancestor's bounty, because Walter failed to leave lawful issue, neither harmonizes with the terms of the particular item which gives rise to the controversy nor is in accord with the purpose pervading the whole will. The evident intention of the testator was to do what the parental instinct would naturally prompt him to do—provide by any limitation not too remote for the lawful lineal heirs of either or both of the two children of Moses, but if (by a second marriage of their mother, for instance) there should be *in esse* at the time of the death of either or both, without lawful issue, any person not a descendant of the testator who might inherit from such descendant, then, in that event, it was the testator's purpose that the land should certainly vest in the surviving brother or sister and the issue of such survivor, or, on failure of issue, should be limited over to the other lineal descendants of the testator, the children of Abram and Sarah, rather than pass by inheritance or devise to some person not of his blood.

Entertaining the view that we do, we think that none of the authorities cited, either to sustain the contention that the fee would vest on the death of the testator's wife or of his grandson Walter, have any bearing upon the question of interpretation, which gives rise to the controversy as to the title of the "home place." There is no such analogy to any of those cases as would make them controlling authorities in our interpretation of the will now before us. The contingency in which the plaintiffs would become the owners and entitled to the possession of this land has not arisen and will not arise unless Mrs. Ella Burden should die without issue surviving her—an event altogether possible but not now probable.

There being nothing in the will which discloses a general intent inconsistent with the particular intent expressed in item second, and the particular intent being in accord

with the natural feeling which, as a rule, governs a testator in disposing of his property, we think that the judgment should be reversed. Judgment must be entered below on the case agreed for the defendants for costs.          Reversed.

CLARK, J., dissenting : The clause is inartificially drawn, but it would seem that the plain meaning of the testator is this: He gave the property to Ella and Walter, the children of his deceased son, Moses, and their heirs, with a defeasance that if either should die without heirs of the body that share should go over to the parties named, and if each of them should die without heirs of the body then the whole should go over. The defeasance with remainder over applied to " either " of them who should die without heirs of the body, and to " each of them " if both should die without heirs of the body. I think the result below was correct.